**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| John Geraci, *on behalf of himself and all others similarly situated,* | Civil Action No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Red Robin International, Inc., | |
| Defendant. | |

For this Class Action Complaint, the Plaintiff, John Geraci, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

## JURISDICTION AND VENUE

1. Plaintiff, John Geraci ("Plaintiff"), brings this class action for damages, injunctive relief, and declaratory relief from the illegal actions of Defendant Red Robin International, Inc. ("Defendant" or "Red Robin"). Defendant sent unauthorized automated telemarketing text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(b)(1)(A).

2. Red Robin Gourmet Burgers, Inc. is "a casual dining restaurant chain founded in 1969 that operates through its wholly-owned subsidiary, [Defendant] Red Robin International, Inc., and under the trade name, Red Robin Gourmet Burgers and Brews . . . . ." *See* https://www.prnewswire.com/news-releases/red-robin-gourmet-burgers-and-brews-is-two-weeks-away-from-opening-its-newest-restaurant-in-new-york-300634091.html (last visited Oct. 30, 2018).

3. Red Robin operates a loyalty program called "Red Robin Royalty," which offers various promotions and sales at Red Robin retail locations. *See* https://www.redrobin.com/royalty.html (last visited Oct. 30, 2018).

4. Red Robin regularly sends out automated, template-based text messages to consumers advertising the Red Robin Royalty program itself and various promotions and sales offered via the Red Robin Royalty Program.

5. However, Red Robin does not allow consumers to opt out of receiving future messages, resulting in consumers' repeated receipt of unwanted, unauthorized automated text messages.

6. Specifically, Red Robin advises in its text messages that consumers can "Reply STOP to cancel," but when consumers respond "Stop" as instructed, Red Robin nonetheless continues to send them automated telemarketing text messages.

7. Red Robin's disregard for consumers' opt-out requests constitutes willful and knowing violations of the TCPA.

8. Plaintiff is one such consumer who has been unable to get Red Robin to stop sending him automated telemarketing text messages. After receiving text messages from Red Robin advertising the Red Robin Royalty program and a 50% promotion, Plaintiff responded "Stop" as instructed to stop the messages. But despite acknowledging his request and promising that the "text messages have been canceled," Red Robin continued thereafter to send additional telemarketing text messages to Plaintiff, causing Plaintiff frustration, inconvenience, annoyance and cost.

9. Plaintiff now sues Red Robin for its TCPA violations individually and on behalf of all others similarly situated.

**PARTIES, JURISDICTION AND VENUE**

10. Plaintiff is, and at all times mentioned herein was, an adult individual residing in West Deptford, New Jersey.

11. Defendant, Red Robin International, Inc., is a Nevada corporation headquartered in Greenwood Village, Colorado. It is a wholly-owned subsidiary of Red Robin Gourmet Burgers, Inc.

12. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this district and because a substantial part of the events giving rise to the claim, including Plaintiff's receipt of Red Robin's illegal text messages, occurred in this district.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

14. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

15. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

16. 47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

    (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

    (B) to dial such numbers.

17. In 2003, the FCC "found that equipment can qualify as an ATDS if it (1) 'store[s] pre-programmed numbers or receive[s] numbers from a computer database'; (2) can 'dial those numbers at random, in sequential order, or from a database of numbers'; and (3) its 'basic

3

function' is 'the *capacity* to dial numbers without human intervention.'" *Zeidel v. A&M (2015) LLC*, 2017 WL 1178150, at *10 (N.D. Ill. Mar. 30, 2017) (quoting *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14090-92 (2003) (the "2003 Order"); *see also Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 410 (M.D. Pa. 2014). "The 2003 Order remains effective guidance, according to the Third Circuit in *Dominguez*, 893 F.2d at 119." *Somogyi v. Freedom Mortg. Corp.*, 2018 WL 3656158, at *5 (D.N.J. Aug. 2, 2018) (citing *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018)).

18. The FCC has also clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

2003 Order, 18 FCC Rcd. at 14115 (emphasis supplied); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

19. Moreover, consumers may revoke prior express consent to receive autodialed calls "at any time and through any reasonable means," including "directly in response to a call initiated or made by a caller" and the burden is on the caller to prove it obtained the necessary prior express consent to autodial. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order,* CG Docket No. 02-278, FCC 15-72, at ¶¶ 47, 64 (July 10, 2015) ("2015 FCC Order"); *see also ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 709 (D.C. Cir. 2018). Specifically, automated text message-senders are required to "give consumers a direct opt-out mechanism such as a . . . reply of 'STOP' for text messages." 2015 FCC Order, at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

20. Starting in 2018, Plaintiff began receiving automate telemarketing text messages on his cellular telephone regarding the "Red Robin Royalty" program.

21. The messages were sent from SMS short code 98666.

22. The messages were sent to Plaintiff's cellular telephone number 609-xxx-6943.

23. The messages Defendant sent to Plaintiff were composed of pre-written templates of text, and were identical to text messages Red Robin sent to other consumers. Indeed, several of the text messages received by Plaintiff followed the same template, beginning with "Red Robin Royalty:" and then after listing the details of a given promotion, concluding with "Reply STOP to cancel."

24. Plaintiff repeatedly received messages following this exact template, including on May 25, 2018, June 29, 2018 and October 25, 2018:

 

25. The content of the text messages was automatically generated, with no human involvement in the drafting or directing of the message.

26. To send the messages, Defendant stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and then automatically sent identical messages *en masse* to Plaintiff and thousands of other consumers at the same time.

27. No human directed any single text message to Plaintiff's number.

28. Moreover, upon information and belief, Defendant's telephone system used to send the text messages had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

29. Frustrated and inconvenienced by receipt of text messages he did not request or take any action to cause, Plaintiff responded "Stop" to Red Robin's text messages on May 25, 2018. In response, Red Robin immediately acknowledged Plaintiff's opt-out request by responding "Your Red Robin Royalty Phone Verification text messages have been canceled. HELP for more info. Msg&data rates may apply."

30. Nonetheless, Plaintiff continued to receive multiple subsequent text messages from Red Robin on June 29, 2018 and October 25, 2018 promoting the Red Robin Royalty program and two different promotions available at Red Robin retail locations.

31. Plaintiff's time was wasted tending to Red Robin's text messages sent after he expressly requested, as directed by Red Robin, that they stop.

32. Receipt of Defendant's unauthorized messages caused Plaintiff to use limited data and text messaging capacity on his cellular telephone plan.

33. Receipt of Defendant's unauthorized messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

34. Defendant did not place the text messages for an emergency purpose.

## CLASS ACTION ALLEGATIONS

### A. The Class

35. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

36. Plaintiff represents, and is a member of the following class (the "Class"):

**All persons who (1) on or after four years prior to the filing of this action (2) were sent Red Robin Royalty text messages, after (3) texting Defendant "Stop" or (4) where Defendant did not possess prior express written consent.**

37. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

### B. Numerosity

38. Upon information and belief, Defendant sent text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent and after they messaged "Stop." The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

39. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### C. Common Questions of Law and Fact

40. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Defendant sent telemarketing text messages to Plaintiff and Class members' cellular telephones using an ATDS;

   b. Whether Defendant had prior express consent to send its automated text messages;

   c. Whether Defendant's conduct was knowing and/or willful;

   d. Whether Defendant is liable for damages, and the amount of such damages; and

   e. Whether Defendant should be enjoined from such conduct in the future.

41. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### D. Typicality

42. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

43. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business

practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F. Proceeding via Class Action is Superior and Advisable**

44. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against AI is small because it is not economically feasible for Class members to bring individual actions.

45. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

**COUNT I**
**Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***

46. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

47. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

48. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

49. Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

50. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

51. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

   a. Defendant violated the TCPA;

   b. Defendant used an ATDS to send text messages to consumers; and

   c. Defendant sent messages to Plaintiff and the Class without prior express consent.

## COUNT II
## Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

52. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

53. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent, and over their explicit requests for Defendant to "Stop" sending the messages.

54. Each of the aforementioned messages by Defendant constitutes a knowing and willful violation of the TCPA.

55. Plaintiff and the Class are entitled to an award of $1,500.00 in damages for each message sent knowingly and willfully in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C).

56. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

57. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

    d. Defendant knowingly and/or willfully violated the TCPA;

    e. Defendant knowingly and/or willfully sent text messages to Plaintiff and the Class;

    f. Defendant knowingly and/or willfully disregarded Plaintiff and the Class members' requests that the automated text messages stop;

    g. Defendant knowingly and/or willfully messaged Plaintiff and the Class with text messages knowing it did not have their prior express consent to do so;

    h. It is Defendant's practice and history to place automated messages to consumers without their prior express consent.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against Defendant:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Declaratory relief as requested;
3. Statutory damages of $500.00 for each and every message in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
4. Treble damages of up to $1,500.00 for each and every message in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
5. An award of attorneys' fees and costs to counsel for Plaintiff; and
6. Such other relief as the Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: November 1, 2018

                                Respectfully submitted,

                                By  /s/ Sofia Balile

                Sofia Balile
                LEMBERG LAW, L.L.C.
                43 Danbury Road, 3rd Floor
                Wilton, CT 06897
                Telephone: (203) 653-2250
                Facsimile:  (203) 653-3424
                Attorneys for Plaintiff