**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-1826-KLM

John Geraci, *on behalf of himself
and all others similarly situated,*

        Plaintiff,

    v.

Red Robin International, Inc.

        Defendant.

---

**DEFENDANT RED ROBIN INTERNATIONAL INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

---

Defendant Red Robin International, Inc. ("Red Robin"), through counsel, pursuant to

Fed. R. Civ. P. 12(b)(6), moves to dismiss Plaintiff's Complaint (ECF. Dkt. 1), and in support

thereof, states as follows:

### Certificate of Conferral

Local Rule 7.1(b)(2) does not require conferral on this motion to dismiss brought under

Fed. R. Civ. P. 12. Further, at this time, no attorney has entered an appearance with this Court on

behalf of Plaintiff John Geraci. Nevertheless, it is known that Plaintiff opposes this motion.

Before this case was transferred, Plaintiff's attorney in New Jersey advised the United States

District Court for the District of New Jersey that Plaintiff will oppose the motion to dismiss. *See*

ECF Dkt. 7 at p. 2.

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................... 1

II.  FACTS ....................................................................................................... 2

    A.   The TCPA Has Evolved to Restrict Speech Based on Its Content ....................... 2

    B.   The TCPA's Definition of the Term ATDS is Ambiguous ................................. 3

    C.   The Current Litigation ........................................................................... 5

III. LEGAL STANDARD .................................................................................. 5

IV.  ARGUMENT ............................................................................................. 6

    A.   The TCPA Violates the First Amendment ................................................... 6

        i.   The TCPA Is Subject to Strict Scrutiny ................................................ 6

        ii.  The TCPA Cannot Survive Strict Scrutiny ........................................... 7

            (a)   The TCPA Does Not Serve A Compelling Interest ...................... 8

            (b)   The TCPA Is Not Narrowly Tailored ........................................... 9

    B.   The TCPA Violates the Due Process Clauses of the Fifth and Fourteenth Amendments ....................................................................................... 10

    C.   Plaintiff Fails To State A Claim ............................................................. 11

V.   CONCLUSION .......................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ..........................................................................4, 10

*Accounting Outsourcing, LLC v. Verizon Wireless Personal Commc'ns, L.P.*,
    329 F. Supp. 2d 789 (M.D. La. 2004) ......................................................................10

*Armstrong v. Investor's Business Daily, Inc.*,
    2018 WL 6787049 (C.D. Cal. Dec. 21, 2018) .........................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................5

*Ashland Hosp. Corp. v. SEIU*,
    708 F.3d 737 (6th Cir. 2013) ...................................................................................9

*Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*,
    923 F.3d 159 (4th Cir. 2019) .................................................................3, 6, 7, 8, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................5

*Brown v. Entm't Merchants*,
    564 U.S. 786 (2011) ................................................................................................8

*Browne v. City of Grand Junction*,
    136 F. Supp. 3d 1276 (D. Colo. 2015) ....................................................................7

*Cahaly v. Larosa*,
    796 F.3d 399 (4th Cir. 2015) ...................................................................................9

*City of Boerne v. Flores*,
    521 U.S. 507 ...........................................................................................................7

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018)....................................................................................11

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019) ...............................................................3, 7, 8, 10

*Frisby v. Schultz*,
    487 U.S. 474 (1988).................................................................................................9

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)...................................................................................................10

*Greenley v. Laborers' Int'l Union of N. Am.*,
    271 F. Supp. 3d 1128 (D. Minn. 2017)........................................................................7

*Hulsey v. Peddle, LLC*,
    2017 WL 8180583 (C.D. Cal. Oct. 23, 2017).............................................................12

*Kirkeby v. Furness*,
    92 F.3d 655 (8th Cir. 1996) ........................................................................................8

*Kolender v. Lawson*,
    461 U.S. 352 (1983)...................................................................................................10

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) ...................................................................................11

*McConnell v. Cirbo*,
    No. 11-CV-02342-WJM-KLM, 2012 WL 3590762 (D. Colo. Apr. 24, 2012) ........................6

*McCullen v. Coakley*,
    134 S. Ct. 2518 (2014)................................................................................................8

*Mejia v. Time Warner Cable Inc.*,
    Nos. 15-CV-6445 (JPO) 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) .....................7

*Metromedia, Inc. v. City of San Diego*,
    453 U.S. 490 (1981).....................................................................................................6

*Minn. v. Mille Lacs Band of Chippewa Indians*,
    526 U.S. 172 (1999).....................................................................................................8

*Police Dep't of Chicago v. Mosley*,
    408 U.S. 92 (1972).......................................................................................................6

*Rallo v. Palmer Admin. Servs., Inc.*,
    No. 18-CV-01510-RM-MEH, 2019 WL 1468411 (D. Colo. Apr. 3, 2019) ...........12

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015).............................................................................................6, 7

*Reno v. American Civil Liberties Union*,
    521 U.S. 844 (1997)...................................................................................................10

*Sartori v. Susan C. Little & Assocs., P.A.*,
    571 F. App'x 677 (10th Cir. 2014) .......................................................................2, 11

*Sprye v. Ace Motor Acceptance Corp.*,
 No. PX 16-3064, 2017 WL 1684619 (D. Md. May 3, 2017)....................................12

*United States v. Playboy Entm't Grp., Inc.*,
 529 U.S. 803 (2000)................................................................................................7

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*,
 536 U.S. 150 (2002)................................................................................................8

**Statutes**

47 U.S.C. § 227 ................................................................................................ *passim*

**Other Authorities**

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Cargo Airline Association Petition for Expedited Declaratory Ruling, Order, CG Docket No. 02-278, FCC 14-32, 29 FCC Rcd 3432 (2014) ....................................3

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02- 278, FCC 15-72, 30 FCC Rcd. 7961 (2015)................................................................................................3

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278, FCC 16-72, 31 FCC Rcd 7394 (2016)................................................................................................2

## I.    __INTRODUCTION__

Based on his receipt of text messages related to Red Robin's loyalty program, "Red Robin Royalty," in which plaintiff John Geraci ("Plaintiff") voluntarily enrolled and provided his telephone number, Plaintiff now seeks as much as $1,500 per message in damages under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") on behalf of himself and a nationwide putative class.

Plaintiff sues under Section 227(b)(1)(A)(iii), which prohibits placing calls to cell phones using an "automatic telephone dialing system" ("ATDS") without the recipient's "prior express consent."  These restrictions on speech, however, do not apply universally to all calls; instead, the statute carves out government-preferred speech by exempting "call[s] . . . made solely to collect a debt owed to or guaranteed by the United States."  *Id.*  In other words, banks, lenders, debt collectors, and other private companies calling to collect on student loans, mortgages, and other debts owed to or guaranteed by the government are not subject to the TCPA's speech restrictions.  The effect of this exemption is that speakers of disfavored messages, like Red Robin, face the threat of crippling class action liability while speakers conveying the government's preferred messages face no restriction or liability at all.  This exemption is incompatible with the U.S. Constitution – as the Fourth and Ninth Circuits have recently held. This Court should strike down the TCPA as unconstitutional – not repair it – as the Fourth and Ninth Circuits elected to do.

The TCPA is also unconstitutional because the definition of an ATDS is vague.  *See* 47 U.S.C. § 227(a)(1).  This violates due process as legitimate callers face liability under the statute but do not know what exactly is prohibited before making calls.

Even if the TCPA is constitutional, however, the Complaint is still legally deficient because Plaintiff fails to allege sufficient facts to support his allegation that Red Robin used an

ATDS – a required element of his claim.  Accordingly, the Complaint should be dismissed on this ground as well.

## II.   FACTS

### A.   The TCPA Has Evolved to Restrict Speech Based on Its Content

When Congress enacted the TCPA in 1991, it sought to target telemarketing that used automated dialing machines to call cell phone numbers randomly or using long lists of sequential numbers, or that used prerecorded messages.  Pub. L. No. 102-243, § 2 (1991).  Under the TCPA, a caller using an ATDS must first obtain the "prior express consent" of the "called party," either orally or in writing, before they may speak.  *See Sartori v. Susan C. Little & Assocs., P.A.,* 571 F. App'x 677, 682 (10th Cir. 2014).  The justification for this law was the need to protect consumers from the nuisance and invasion of privacy of unwanted communications.  Specifically, Congress found that "residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy."  Pub. L. No. 102-243, § 2 at ¶ 10.

An amendment to the TCPA's text highlights how the TCPA permits content based discrimination.  In November 2015, Congress amended the TCPA's call restrictions to exempt from liability calls placed by private parties "made solely to collect a debt owed to or guaranteed by the United States."  Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588 (2015).  The Federal Communications Commission ("FCC") then confirmed that the statute also categorically exempts from the restrictions both governmental entities and "agents" transmitting government "authorized" messages.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278, FCC 16-72, 31 FCC Rcd 7394, 7398, 7403-04 ¶¶ 10, 17 (2016) ("July 2016 FCC Order").  Under 47 U.S.C. § 227(b)(2)(C), the FCC also established further regulatory exemptions for

government-favored speech, including package-delivery notifications,[1] calls relating to bank transfers,[2] and healthcare-related calls.[3]  Nothing in the statute prevents the FCC in the future from enacting even more content-based restrictions on speech.  As a result of these enacted restrictions, whether or not a certain message violates the TCPA now plainly turns on the content and speaker of the message, as it did not before.

The Fourth and Ninth Circuit Court of Appeals have recently severed the government debt exemption from the TCPA, because it violates the First Amendment as a content based-speech restriction.  *Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n ("AAPC")*, 923 F.3d 159 (4th Cir. 2019); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019).

### B.  The TCPA's Definition of the Term ATDS is Ambiguous

In addition to the content- and speaker-based exemptions for government-favored speech, the scope of liability under the TCPA has also been expanded.  The TCPA defines the term ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  In 2015, the FCC expanded liability under the TCPA by broadening the definition of ATDS to include not only equipment that has the "present ability" to dial using a random or sequential number generator, but also that has the "potential" or "future capacity" to do so.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02- 278, FCC 15-72, 30 FCC Rcd. 7961, 7971-72, 7974-76 ¶¶ 10, 16, 19 (2015) ("2015 FCC Order").  FCC Commissioner Ajit Pai, who is now Chairman of

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Cargo Airline Association Petition for Expedited Declaratory Ruling, Order, CG Docket No. 02-278, FCC 14-32, 29 FCC Rcd 3432, 3437-38 ¶ 18 (2014).

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02- 278, FCC 15-72, 30 FCC Rcd. 7961, 8024-28 ¶¶ 129-38 (2015).

[3] *Id.* at 8031-32 ¶¶ 146-48.

the FCC, dissented to this expansive definition, stating that it "dramatically expands the TCPA's reach" and is "flatly inconsistent with the TCPA."  2015 FCC Order, 30 FCC Rcd. at 8074.

This broad definition gave rise to a flood of litigation.  The TCPA call restrictions, which had served as the basis for less than 100 complaints filed in 2009, became the center of 4,840 lawsuits in 2016, and 4,392 in 2017.  *See* WebRecon LLC, WebRecon Stats for Dec 2017 & Year in Review, https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review (visited July 29, 2019).  From January to September of 2018, the TCPA served as the basis for 29% of class action lawsuits filed. *Id.*

In March 2018, a unanimous panel of the D.C. Circuit set aside the FCC's broad interpretation of the term ATDS.  *ACA Int'l v. FCC*, 885 F.3d 687, 700-01 (D.C. Cir. 2018).  The D.C. Circuit held that the FCC's determination in its July 2015 Order that equipment could be an ATDS based on its "potential functionalities" was an "unreasonable, and impermissible, interpretation" of the TCPA.  *Id.* at 695-97.  Although the D.C. Circuit rejected the FCC's expansive definition of the term ATDS, it did not address the unconstitutional content- and speaker-based speech restrictions or define the term ATDS.

Following *ACA International*, numerous groups filed petitions with the FCC asking the Commission to clarify the definition of ATDS.  On May 17, 2018, the FCC responded by issuing a public notice seeking comments on a new definition of ATDS.  *See Consumer And Governmental Affairs Bureau Seeks Comment on Interpretation of The Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, CG Docket No. 18-152, CG Docket No. 02-278, DA 18-493 (May 14, 2018).  Specifically, the FCC requested comments on the question of whether, "[i]f equipment cannot itself dial random or sequential numbers, can that equipment be an automatic telephone dialing system?"  *Id.*  The public

comment period closed on June 28, 2018.  *Id.*  The FCC has not issued its rulemaking in response to these comments.

### C. **The Current Litigation**

Red Robin offers a loyalty program that allows customers of Red Robin to receive discounts and other promotions called "Red Robin Royalty."  Compl. at ¶ 3.  Plaintiff alleges that in 2018, he started to receive automated telephone messages to his cell phone regarding Red Robin Royalty.  *Id.* at ¶ 20.  Plaintiff alleges that on May 25, 2018, he responded "Stop" to one of these messages but he allegedly continued to receive the messages.  *Id.* at ¶¶ 29-30.

Plaintiff further alleges that the text messages he received from Red Robin violate the TCPA because Red Robin sent these messages via an ATDS, and he did not request or take any action to receive them.  *Id.* at ¶¶ 20-34.  To support the claim that Red Robin, used an ATDS to send these messages, the Complaint simply recites the statutory definition.  *Id.* at ¶ 28.  Plaintiff now seeks, on behalf of himself and a putative class over a period of four years, up to $1,500 for every single text message Red Robin sent to its customers participating in the Red Robin Royalty program.  *Id.* at ¶¶ 8-9, 46-57.

## III. **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also McConnell v. Cirbo*, No. 11-CV-02342-WJM-KLM, 2012 WL 3590762, at *3 (D. Colo. Apr. 24, 2012) (Mix, J.) ("A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement.")

(citations omitted).  Applying these standards, the Complaint should be dismissed.

## IV.   ARGUMENT

### A.   The TCPA Violates the First Amendment

#### i.   The TCPA Is Subject to Strict Scrutiny

The First Amendment states that "Congress shall make no law… abridging the freedom

of speech."  U.S. Const. amend. I.  *Reed v. Town of Gilbert* mandates that "[g]overnment

regulation of speech is content based if a law applies to particular speech because of the topic

discussed or the idea or message expressed," and that such laws are subject to strict scrutiny

"regardless of the government's benign motive, content-neutral justification, or lack of 'animus

toward the ideas contained' in the regulated speech."  135 S. Ct. 2218, 2227-28 (2015) (citation

omitted).   For example, a restriction on picketing near schools that exempts picketing on labor

issues are content-based government restrictions on speech.  *See Police Dep't of Chicago v.

Mosley*, 408 U.S. 92, 102 (1972); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 516

(1981) (plurality op.).

On their face, the call restrictions contained in Section 227(b)(1)(A)(iii) of the TCPA

discriminate based on a call's content. The law "draws distinctions based on the message a

speaker conveys"—i.e., a caller may use an ATDS to collect a government debt, but not (for

example) to urge church attendance, solicit a charitable contribution, or (as here) communicate

with a customer.  The law also "accords preferential treatment to the expression of views on one

particular subject" by permitting calls to collect a debt owed to or guaranteed by the United

States, while restricting calls about discharging, contesting, or consolidating those same debts.

*See AAPC*, 923 F.3d at 166 ("[T]he debt-collection exemption to the automated call ban facially

distinguishes between phone calls on the basis of their content. As that exemption specifies,

otherwise prohibited automated calls made to cell phones "solely to collect a debt owed to or

guaranteed by the United States" do not violate the automated call ban and are legally

permissible."). This viewpoint discrimination is an even "more blatant" and "egregious form of

content discrimination." *Reed*, 135 S. Ct. at 2230 (citation omitted).

Courts – including two appellate courts – have determined the restrictions in Section

227(b)(1)(A)(iii) of the TCPA to be content-based and subject to strict scrutiny.[4]  *See Duguid v.*

*Facebook, Inc*., 926 F.3d 1146 (9th Cir. 2019); *AAPC*, 923 F.3d at 166; *Greenley v. Laborers'*

*Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1145 (D. Minn. 2017); *Mejia v. Time Warner Cable*

*Inc.*, Nos. 15-CV-6445 (JPO), 15-CV-6518 (JPO), 2017 WL 3278926, at *14 (S.D.N.Y. Aug. 1,

2017).

### ii.    The TCPA Cannot Survive Strict Scrutiny

Strict scrutiny is "the most demanding test known to constitutional law," *City of Boerne*

*v. Flores*, 521 U.S. 507, 534.  Laws subject to it are "presumptively invalid," *United States v.*

*Playboy Entm't Group., Inc.*, 529 U.S. 803, 817 (2000); *Browne v. City of Grand Junction,* 136

F. Supp. 3d 1276, 1287 (D. Colo. 2015) ("A content-based restriction is presumptively

unconstitutional and subject to strict scrutiny.")  To overcome this heavy presumption of

invalidity, the government (or party defending the restriction) must carry the burden of proving

that the content-based restriction is narrowly tailored to advance a compelling government

interest.  *Browne*, 136 F. Supp. 3d at 1288.  It is "rare" for a content-based restriction to satisfy

---

[4] While these courts did not strike down the TCPA, their rulings were either based upon the erroneous conclusion that the unconstitutional government debt collection exemption was severable from the TCPA (*infra* p. 8) or incorrectly determined that the exemption survived strict scrutiny by, for example, discovering new and unsupported "compelling" interests in privacy.

these exacting standards.  *Brown v. Entm't Merchants*, 564 U.S. 786, 799 (2011).  A content-based restriction on the sending of text messages is not one of them.

The Fourth and Ninth Circuit Court of Appeals have recently found that the government debt exemption renders the TCPA unconstitutional and opted to sever it from the rest of the TCPA.  *See AAPC*, 923 F.3d 159; *Duguid*, 926 F.3d 1146.[5]  As demonstrated below, the TCPA restrictions on speech under Section 227(b)(1)(A)(iii) do not survive strict scrutiny.

### (a)      The TCPA Does Not Serve A Compelling Interest

Section 227(b)'s purported goal—protecting cell phone owners from unwanted automated calls—is not a compelling interest.  While insulating individuals from annoying phone calls may be a laudable goal, it is not the sort of interest that is sufficiently "compelling" to justify a content-based speech restriction.  As the Eighth Circuit has observed, "[t]he Supreme Court has never held that [residential privacy] is a compelling interest . . . and we do not think that it is."  *Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996); *see also McCullen v. Coakley*, 134 S. Ct. 2518, 2548 (2014) (Scalia, J., concurring) ("Suffice it to say that if protecting people from unwelcome communications . . . is a compelling state interest, the First Amendment is a dead letter." (internal quotation marks and citation omitted)); *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002) (city ordinance that required door-to-door advocates, and commercial solicitors, to obtain a permit from the mayor's office was too broad a ban on speech if only justified as a fraud-prevention and privacy-protection measure).

---

[5]  The Fourth and Ninth Circuits incorrectly severed the government debt collection exemption because the Courts did not examine the legislative history surrounding the TCPA, which demonstrates that the government debt exemption is not severable.  *Minn. v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999) (noting that severability inquiry focuses on congressional intent).  Instead, the Fourth and Ninth Circuits focused on the fact that the call restrictions were operative for nearly twenty years.  *AAPC*, 923 F.3d at 171; *Duguid*, 926 F.3d at 1156.  This is not the relevant inquiry and the Fourth and Ninth Circuits should have invalidated 47 U.S.C. § 227 (b) in its entirety.  *See* Pub. L. No. 102- 243, § 2 at ¶ 13 (noting that Congress intended for the TCPA's exemptions to work in tandem with its call restrictions).  Thus, the rulings by the Fourth and Ninth Circuits result in a version of the TCPA that restricts even more protected speech.

**(b)      The TCPA Is Not Narrowly Tailored**

Even if the Court accepts that the interest of preventing unwanted calls is a compelling

interest (which it is not), the TCPA is not narrowly tailored to achieve that goal.  The TCPA is,

in fact, both under- and over-inclusive regarding that purported interest.  Narrow tailoring

requires targeting "no more than the exact source of the 'evil' [the regulation] seeks to remedy."

*Frisby v. Schultz*, 487 U.S. 474, 485 (1988).  The "exact source" of the problem the TCPA seeks

to remedy is "abusive telemarketing practices that threaten the privacy of consumers and

businesses."  *Ashland Hosp. Corp. v. SEIU*, 708 F.3d 737, 740-41 (6th Cir. 2013).  With its

broad restrictions on speech by parties not favored by the Government, the TCPA restricts more

speech than necessary and is not "narrowly tailored."  *See Cahaly v. Larosa*, 796 F.3d 399, 405

(4th Cir. 2015) (state-analogue of TCPA not narrowly tailored where less-restrictive alternatives

existed).

Further, Congress has also observed that "[e]vidence . . . indicates that residential

telephone subscribers consider automated or prerecorded telephone calls, *regardless of the*

*content or the initiator of the message*, to be a nuisance and an invasion of privacy."  Pub. L. No.

102-243, § 2, ¶ 10 (emphasis added).  However, the TCPA explicitly exempts several broad

categories of (identically intrusive) speech, including calls that promote the collection of

government-backed debt, calls authorized by the government, and various types of calls favored

by the FCC.  *See supra* pg. 3.  This unfair preferential treatment renders the TCPA under-

inclusive with its improper speaker- and content-based exceptions that permit some calls while

preventing others.  *See Cahaly*, 796 F.3d at 406 (state TCPA analogue was "underinclusive"

where it permitted "unlimited proliferation" of certain types of speech); *see also AAPC*, 923 F.3d

at 169 ("Although theoretically limited by the number of debtors owing loans guaranteed by the

federal government, the debt-collection exemption authorizes a nearly 'unlimited proliferation'

of disruptive and intrusive automated debt-collection efforts"); *Duguid*, 926 F.3d at 1155 ("The post-amendment TCPA is underinclusive, in that it excepts automated calls placed pursuant to the debt-collection exception, which are—all else being equal—every bit as invasive of residential and personal privacy as any other automated call.").

### B.     The TCPA Violates the Due Process Clauses of the Fifth and Fourteenth Amendments

To satisfy the Due Process clauses of the Fifth and Fourteenth Amendments, statutes must be set out with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The guidance provided by a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The constitutional concerns about providing sufficient definiteness for ordinary people to understand what conduct is prohibited are heightened in the context of prohibited speech. *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 871-72 (1997) (explaining the vagueness of a "content-based regulation of speech . . . raises special First Amendment concerns because of its obvious chilling effect on free speech"). A greater need for definiteness is present here because, as discussed above, the TCPA regulates constitutionally protected speech. *See Accounting Outsourcing, LLC v. Verizon Wireless Personal Commc'ns, L.P.*, 329 F. Supp. 2d 789, 805 (M.D. La. 2004) ("[B]ecause the TCPA regulates constitutionally protected commercial speech, it must satisfy a more rigid vagueness test, such that even one impermissible application would render the TCPA vague.").

Although the *ACA Int'l* Court set aside the FCC's 2015 Order, the vague statutory language remains and courts across the country have reached conflicting decisions about what systems do, and do not, qualify as an ATDS. For example, following *ACA Int'l*, the Third

Circuit has held that a device that dials from a list of predetermined numbers is not an ATDS. *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018). The Ninth Circuit, in contrast, has ruled that such a device may qualify as an ATDS. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018). This patchwork of opinions makes it difficult, if not impossible, for a company to know what conduct is prohibited. This is especially troublesome in the context of a nationwide class action where texts sent in the Third Circuit may be permitted under the holding in *Dominguez*, whereas those same texts sent by the same company may be prohibited in the Ninth Circuit under the holding in *Marks*. And, in Circuits that have not yet opined on the vague statutory language, defendants are left to guess about which devices they can and cannot use to send text messages. Such a result leaves businesses without the ability to govern their affairs in accordance with the law and fundamentally violates the due process clause.

### C.    Plaintiff Fails To State A Claim

Plaintiff's Complaint also warrants dismissal on the additional ground that he fails to plead facts to support the elements of his claim. An essential element of Plaintiff's claim under 47 U.S.C. § 227(b)(1)(A)(iii) is to plead facts in support of the allegation that Red Robin used an ATDS to send him text messages. *See Sartori v. Susan C. Little & Assocs., P.A.*, 571 F. App'x 677, 682 (10th Cir. 2014) ("47 U.S.C. § 227(b)(1)(A)(iii) . . . renders it unlawful "to make any call . . . using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service."") (quotation marks omitted). The TCPA defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers." 47 U.S.C. § 227(a)(1). Plaintiff fails to plead the requisite facts in support of his TCPA claim.

Plaintiff alleges that "to send the messages, Defendant stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone

numbers and then automatically sent identical messages *en masse* to Plaintiff and thousands of other consumers at the same time."  Compl. at ¶ 26.  Plaintiff further alleges that "Defendant's telephone system used to send the text messages had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers."  *Id.* at ¶ 28.  Plaintiff also alleges that the messages he received were from an SMS short code, but fails to connect this allegation with his claim that Red Robin used an ATDS.  *Id.* at ¶ 21.

These allegations merely parrot the statutory definition of ATDS.  Courts have repeatedly held that conclusory allegations that parrot the statutory language are insufficient to sustain a claim that an ATDS was used under the TCPA.  *See Rallo v. Palmer Admin. Servs., Inc*., No. 18-CV-01510-RM-MEH, 2019 WL 1468411, at *4 (D. Colo. Apr. 3, 2019) (concluding that plaintiff did not allege that she receive calls from an ATDS where allegations mirrored the statutory elements); *Armstrong v. Investor's Business Daily, Inc*., 2018 WL 6787049, at *6 (C.D. Cal. Dec. 21, 2018) (dismissing TCPA claim where "Plaintiff's allegations are mere recitation of the legal definition of an ATDS as defined by TCPA"); *Hulsey v. Peddle*, *LLC*, 2017 WL 8180583, at *2 (C.D. Cal. Oct. 23, 2017) (granting motion to dismiss where plaintiff's "allegations consist solely of paraphrases of the [statutory] definition of ATDS"); *Sprye v. Ace Motor Acceptance Corp*., No. PX 16-3064, 2017 WL 1684619, at *5 (D. Md. May 3, 2017) (dismissing claim where plaintiff's complaint merely restated the TCPA's statutory definition of ATDS and were "nothing more than a formulaic recitation" of the statutory elements).  The same result should be reached here and the Court should dismiss the Complaint.

## V.     **CONCLUSION**

For the reasons set forth above, Red Robin respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice and award any other relief the Court deems just and proper.

Dated:  July 29, 2019

Respectfully Submitted,

KELLEY DRYE & WARREN LLP

/s/ *Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti
Whitney Smith
One Jefferson Road
Parsippany, New Jersey 07054
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
(973) 503-5900

POLSINELLI PC

Stacy A. Carpenter, #27227
Richard M. Murray, #38940
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
Telephone:  303-572-9300
Facsimile:  303-572-7883
Email: scarpenter@polsinelli.com
rmurray@polsinelli.com

*Counsel for Red Robin International, Inc.*