IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01826-RM-KLM

JOHN GERACI, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

RED ROBIN INTERNATIONAL, INC.,

    Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss Plaintiff's Class Action Complaint** [#33][1] (the "Motion"). Plaintiff filed a Response [#44] in opposition to the Motion [#33], and Defendant filed a Reply [#45]. The Government filed a Brief [#60] in support of the constitutionality of the Telephone Consumer Protection Act ("TCPA"), to which Defendant filed a Reply [#64] in opposition. The Motion [#33] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.L.CivR 72.1. *See* [#43]. The Court has reviewed the briefs, the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#33] be **DENIED**.

---

[1] "[#33]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Recommendation.

-1-

## I. Background[2]

Red Robin Gourmet Burgers, Inc. is "a casual dining restaurant chain founded in 1969 that operates through its wholly-owned subsidiary, [Defendant] Red Robin International, Inc., and under the trade name, Red Robin Gourmet Burgers and Brews." *Compl.* [#1] ¶ 2. Defendant operates a loyalty program called "Red Robin Royalty," which offers various promotions and sales at Red Robin retail locations. *Id.* ¶ 3. Defendant regularly sends out automated, template-based text messages to consumers advertising the Red Robin Royalty program itself and various promotions and sales offered via the Red Robin Royalty Program. *Id.* ¶ 4.

Plaintiff brings this suit under the TCPA, 47 U.S.C. § 227(b)(1)(A), because Defendant allegedly "sent unauthorized automated telemarketing text messages to Plaintiff's cellular phone." *Id.* ¶ 1. Defendant allegedly does not allow consumers to opt out of receiving future messages, resulting in consumers' repeated receipt of unwanted, unauthorized automated text messages. *Id.* ¶ 5. Defendant advises in its text messages that consumers can "Reply STOP to cancel," but when consumers respond "Stop" as instructed, Defendant allegedly continues to send them automated telemarketing text messages. *Id.* ¶ 6. Plaintiff asserts that Defendant's "disregard for consumers' opt-out requests constitutes willful and knowing violations of the TCPA." *Id.* ¶ 7.

Specifically as to Plaintiff, starting in 2018, Plaintiff began receiving automated telemarketing text messages on his cellular telephone regarding the Red Robin Royalty

---

[2] For the purpose of reviewing this Motion [#33], the Court takes all allegations in the Complaint [#1] in the light most favorable to Plaintiff as the nonmovant. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

program. *Id.* ¶ 20. The messages were composed of pre-written templates of text and were identical to text messages Defendant sent to other consumers. *Id.* ¶ 23. Plaintiff repeatedly received messages following this exact template, including on May 25, 2018, June 29, 2018, and October 25, 2018. *Id.* ¶ 24. The content of the text messages was allegedly automatically generated, with no human involvement in the drafting or directing of the message. *Id.* ¶ 25. To send the messages, Defendant stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and then automatically sent identical messages en masse to Plaintiff and thousands of other consumers at the same time. *Id.* ¶ 26.

Plaintiff alleges that he was frustrated and inconvenienced by receipt of text messages he did not request or take any action to cause, so he responded "Stop" to Red Robin's text messages on May 25, 2018. *Id.* ¶ 29. In response, Defendant immediately acknowledged Plaintiff's opt-out request by responding "Your Red Robin Royalty Phone Verification text messages have been canceled. HELP for more info. Msg&data rates may apply." *Id.* Regardless, Plaintiff received more text messages from Defendant on June 29, 2018, and October 25, 2018, promoting the Red Robin Royalty program and two different promotions available at Red Robin retail locations. *Id.* ¶ 30. Plaintiff asserts that his time was wasted tending to Defendant's text messages sent after he expressly requested that they stop. *Id.* ¶ 31. Plaintiff also alleges that receipt of Defendant's unauthorized messages caused Plaintiff to use limited data and text messaging capacity on his cellular telephone plan, drained Plaintiff's phone battery, and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery. *Id.* ¶ 33.

As a result of Defendant's actions, Plaintiff seeks injunctive relief prohibiting such

violations of the TCPA by Defendant in the future; statutory damages of $500.00 for each and every message in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B); and treble damages of up to $1,500.00 for each and every message in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C). In the present Motion [#33], Defendant seeks dismissal of this entire action pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

Similarly, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 (citation omitted).

Further, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 566 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

To determine if a complaint survives a motion to dismiss, courts utilize Rule 8, instructing that "[a] plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate. . . has been incorporated into the 12(b)(6) inquiry." *United States ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 429 F. App'x at 689.

### III. Analysis

Defendant seeks dismissal of Plaintiff's lawsuit because the TCPA violates the First, Fifth, and Fourteenth Amendments, and because Plaintiff fails to state a claim. *Motion* [#33] at 2. As the Government points out, the Court is required to address any nonconstitutional arguments before reaching any issues regarding the constitutionality of a statute. *Motion* [#60] at 2, 4; *Gulf Oil. Co. v. Bernard*, 452 U.S. 89, 99 (1981); *Hagans v. Lavine*, 415 U.S. 528, 547 (1974); *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). Accordingly, the Court begins by addressing whether Plaintiff has sufficiently stated a claim under Fed. R. Civ. P. 12(b)(6). *See Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156-57 (9th Cir. 2019), *petition for cert. filed*, (U.S. Oct. 21, 2019) (No. 19-511) (determining whether the plaintiff adequately alleged a TCPA violation before determining the constitutionality of the statute).

**A.     Failure to State a Claim**

In relevant part, 47 U.S.C. § 227(b)(1) provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .

Defendant argues that Plaintiff failed to adequately plead that Defendant used an automatic telephone dialing system ("ATDS") to send Plaintiff text messages. *Motion* [#33] at 16.

To adequately plead a claim under 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff must allege that Defendant used an ATDS to call his cell phone, without his consent and for a non-emergency purpose. *See, e.g.*, *Georgopulous v. PPM Capital, Inc.*, No. 19-cv-00347-

DDD-STV, 2019 WL 6065617, at *8 (D. Colo. Oct. 21, 2019). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Text messages to cell phones have been held to constitute calls under this statute. *See, e.g.*, *Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016); *Vazquez v. TriAd Media Solutions, Inc.*, __ F. App'x __, __, No. 19-1124, 2019 WL 6838609, at *1 n.3 (3d Cir. Dec. 16, 2019).

In his Complaint, Plaintiff alleges that "[t]he content of the text messages was automatically generated, with no human involvement in the drafting or directing of the message." *Compl.* [#1] ¶ 25. Plaintiff further alleges that, "[t]o send the messages, Defendant stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and then automatically sent identical messages *en masse* to Plaintiff and thousands of other consumers at the same time." *Id.* ¶ 26. In addition, Plaintiff states that "[t]he messages Defendant sent to Plaintiff were composed of pre-written templates of text, and were identical to text messages Red Robin sent to other consumers," and that, "several of the text messages received by Plaintiff followed the same template, beginning with 'Red Robin Royalty:' and then after listing the details of a given promotion, concluding with 'Reply STOP to cancel.'" *Id.* ¶ 23.

In *Rallo v. Palmer Administrative Services, Inc.*, No. 18-cv-01510-RM-MEH, 2019 WL 1468411, at *3 (D. Colo. Apr. 3, 2019), the Court found that the plaintiff had not adequately alleged use of an ATDS because there were no allegations showing that the calls at issue "originated from an ATDS or used an artificial or prerecorded voice." The

*Rallo* court distinguished *In re Jiffy Lube International, Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012), noting that the court there:

> addressed the issue of whether the plaintiffs sufficiently alleged text messages they received originated from an ATDS. There, the plaintiffs alleged they received "a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers." The court found this statement sufficient to allege the messages came from an ATDS under *Twombly*. The text messages at issue in *In re Jiffy Lube* bore some indicia that they were sent using an ATDS—specifically, that it originated from "an SMS short code." Thus, the plaintiffs in the case alleged non-conclusory facts to make the claim plausible.

2019 WL 1468411, at *3 (internal citations omitted).

Other courts have similarly found that allegations that SMS short codes are used are sufficient to state a claim under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Fishman v. Subway Franchisee Advert. Fund Trust, Ltd.*, No: 2:19-cv-02444-ODW (Asx), 2019 WL 6135030, at *8 (C.D. Cal. Nov. 19, 2019); *Yashtinsky v. Walmart, Inc.*, No. 5:19-CV-5105, 2019 WL 5986708, at *5 (W.D. Ark. Nov. 12, 2019) (holding that a claim was adequately stated where allegations included, among others, that text messages appeared generic rather than directed specifically at the plaintiff and that messages came from a "shortcode number" owned by the defendant). Here, Plaintiff has similarly alleged that the text messages originated from an SMS short code and that his opt-out requests were not successful. *Compl.* [#1] ¶ 20 ("The messages were sent from SMS short code 98666."); *see also Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1168-69 (N.D. Cal. 2010) (denying a motion to dismiss where the plaintiff alleged that he "received ten text messages from Short Message Service (SMS) Code 77893" and that his opt-out "Stop" responses were not honored).

The Court finds that the allegations of the Complaint distinguish this case from other cases cited by Defendant where the plaintiffs' allegations consisted exclusively of paraphrasing the statutory language. *See Motion* [#3] at 17 (citing *Rallo*, 2019 WL 1468411, at *4; *Armstrong v. Inv'r's Bus. Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2018 WL 6787049, at *6 (C.D. Cal. Dec. 21, 2018) (noting that allegations such as "the repetitive nature of the same text messages being sent, the frequency of such text messages, whether they came from an SMS shortcode as opposed to a telephone number . . . , the ability to respond to or interact with the text messages (i.e., sending "Stop"), and other relevant contextual facts" were not present); *Hulsey v. Peddle, LLC*, No. CV 17-3843 DSF (Asx), 2017 WL 8180583, at *2 (C.D. Cal. Oct. 23, 2017) (granting motion to dismiss where the plaintiff's "allegations consist solely of paraphrases of the [statutory] definition of ATDS"); *Sprye v. Ace Motor Acceptance Corp.*, No. PX 16-3064, 2017 WL 1684619, at *5 (D. Md. May 3, 2017) (dismissing claim where the plaintiff's complaint merely restated the TCPA's statutory definition of ATDS and included "nothing more than a formulaic recitation" of the statutory elements)); *see also Reply* [#45] at 10-12. Thus, at this early stage of the case, given Plaintiff's non-conclusory allegations recited above, the Court finds that Plaintiff has sufficiently alleged that Defendant used an ATDS.

Accordingly, the Court **recommends** that the Motion [#33] be **denied** to the extent it seeks dismissal on the basis that Plaintiff inadequately pled Defendant's use of an ATDS.

## B.     Constitutionality Under the Fifth and Fourteenth Amendments

Defendant also brings a facial void-for-vagueness constitutional challenge to the statutory definition of an ATDS. *Motion* [#33] at 16-17. To reiterate, the TCPA defines an

ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

A facial challenge involves "an examination of whether the terms of the statute itself measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, contain a constitutional infirmity that invalidates the statute in its entirety." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) (internal quotation marks omitted). "Facial challenges are strong medicine, and thus we must be vigilant in applying a most exacting analysis to such claims." *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157 (10th Cir. 2006) (considering facial challenge on vagueness grounds). "'Facial challenges are disfavored for several reasons' including the risk of 'premature interpretation' because such challenges 'often rest on speculation.'" *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 40 (10th Cir. 2013) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). Broad facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange*, 552 U.S. at 450 (internal quotation marks omitted).

"[F]acial challenges are appropriate in two circumstances: (1) when a statute threatens to chill constitutionally protected conduct (particularly conduct protected by the First Amendment); or (2) when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application." *Dias v. City and County of Denver*, 567 F.3d

1169, 1179-80 (10th Cir. 2009). "In the latter case, plaintiffs face a heavy burden: They must demonstrate that the law is impermissibly vague in all of its applications." *Id.* at 1180 (internal quotation marks omitted). Defendant's challenge falls into this second category. *See Motion* [#33] at 16 (stating that, based on the "vague statutory language, defendants are left to guess about which devices they can and cannot use to send text messages").

To be successful on this argument, "a party must show, at a minimum, that the challenged law would be vague in the vast majority of its applications; that is, that 'vagueness permeates the text of [the] law.'" *Doctor John's Inc.*, 465 F.3d at 1157 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999)). A statute may be "impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Jordan v. Pugh*, 425 F.3d 820, 824-25 (10th Cir. 2005); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (stating that a law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited"). "[P]erfect clarity and precise guidance [in a statute] have never been required . . . ." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Defendant argues that "[t]he TCPA fails to provide a clear definition of an ATDS or give a person of ordinary intelligence adequate and constitutional notice regarding what telephone activity is prohibited and leads to liability." *Reply* [#45] at 7. Defendant initially directs the Court's attention to two circuit-court cases which purportedly demonstrate Defendant's argument that "courts across the country have reached conflicting decisions about what systems do, and do not, qualify as an ATDS." *Motion* [#33] at 15. In

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018), the Third Circuit Court of Appeals stated that the "key factual question actually at issue in this case" was "whether the Email SMS System functioned as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers." Ultimately, the Third Circuit said "no," because "the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user." 894 F.3d at 121.

In contrast, in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018), the Ninth Circuit Court of Appeals engaged in a lengthy discussion regarding the appropriate interpretation of an ATDS under 47 U.S.C. § 227(a)(1), ultimately holding that an ATDS is "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person) . . . ." The Ninth Circuit found the Third Circuit's holding in *Dominguez*, which had been decided a mere three months earlier, unpersuasive "[b]ecause the Third Circuit merely avoided the interpretive questions raised by the statutory definition of ATDS" by "fail[ing] to resolve the linguistic problem it identified in an unpublished opinion in the same case, where it acknowledged that 'it is unclear how a number can be stored (as opposed to produced) using "a random or sequential number generator."'" *Marks*, 904 F.3d at 1052 n.8 (quoting *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 n.1 (3d Cir. 2015)).

Defendant asserts that "[t]his patchwork of opinions makes it difficult, if not impossible, for a company to know what conduct is prohibited," and that "in Circuits [like the Tenth Circuit Court of Appeals] that have not opined on the vague statutory language, defendants are left to guess about which devices they can and cannot use to send text

messages." *Motion* [#33] at 16. "Such a result leaves businesses without the ability to govern their affairs in accordance with the law and fundamentally violates the due process clause." *Id.*

A statute is unconstitutionally vague when it is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). Defendant's argument demonstrates that the statutory definition of an ATDS is imprecise, but Defendant has not adequately shown that the definition is incomprehensible to such an extent that no definition is specified at all. In other words, Defendant has shown that there is judicial disagreement about the *contours* of the law but has not shown that the "challenged law would be vague in the vast majority of its applications" or that "vagueness permeates the text of [the] law." *Doctor John's Inc.*, 465 F.3d at 1157. Other courts which have examined this issue in this context have similarly held that, "whatever ambiguity the ATDS definition may exhibit, it does not rise to the level of unconstitutional vagueness." *Hand v. Beach Entm't KC, LLC*, __ F. Supp. 3d __, __, No. 4:18-cv-00668-NKL, 2019 WL 5654351, at *23 (W.D. Mo. Oct. 31, 2019);[3] *see also Wilson v. PL Phase One Operations L.P.*, __ F. Supp. 3d __, __, No. DKC 18-3285, 2019 WL 4735483, at *7 (D. Md. Sept. 27, 2019) ("[A]lthough technical, the TCPA's definition of an ATDS is set out in terms that an ordinary person exercising ordinary

---

[3] Since the *Hand* decision was issued, a number of virtually-identical opinions holding the same have also been issued by the same judicial officer in the Western District of Missouri. *See Doohan v. CTB Inv'rs, LLC*, No. 4:19-cv-00111-NKL, 2019 WL 6497433, at *23 (W.D. Mo. Dec. 3, 2019); *Taylor v. KC VIN, LLC*, No. 4:19-cv-00110-NKL, 2019 WL 6499140, at *23 (W.D. Mo. Dec. 3, 2019); *Hard v. ARB KC, LLC*, No. 4:19-cv-00108-NKL, 2019 WL 6497432, at *23 (W.D. Mo. Dec. 3, 2019); *Smith v. Truman Road Dev., LLC*, 414 F. Supp. 3d 1205, 1240 (W.D. Mo. 2019).

common sense can understand sufficiently and comply with. . . . Accordingly, the TCPA's definition of an ATDS is not unconstitutionally vague.").

As but one example of the type of statute which may be void for vagueness, in *Kolender v. Lawson*, 461 U.S. 352, 359 (1983), the United States Supreme Court struck down on vagueness grounds a statute requiring a person to provide "credible and reliable" identification, because it "vest[ed] virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest." The present case is certainly not a case where "virtually complete discretion" is vested in anyone to determine to the definition of an ATDS. *See also Susinno v. Work Out World, Inc.*, 862 F.3d 346, 349 n.1 (3d Cir. 2017) ("[W]e would not find the TCPA void for vagueness where, as here, it neither 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' nor 'authorizes or even encourages arbitrary and discriminatory enforcement.'") (citation omitted)); *Van Bergen v. State of Minnesota*, 59 F.3d 1541, 1548, 1551 n.6 (8th Cir. 1995) (rejecting vagueness challenge to a state-law analog that was "virtually identical" to the TCPA).

Accordingly, the Court **recommends** that the Motion [#33] be **denied** to the extent it seeks dismissal on the basis of the TCPA's unconstitutionality under the Fifth and Fourteenth Amendments.

### C.     Constitutionality Under the First Amendment

Plaintiff's claims are not based on the government-debt exception to the TCPA, but Defendant argues that the government-debt exception to the TCPA is unconstitutional, that

it cannot be severed from the remainder of the statute, and therefore the TCPA as a whole is unconstitutional, including the portions on which Plaintiff's claims are based. *Motion* [#33] at 11-15; *Reply* [#45] at 2-7; *Reply* [#64] at 2-9. The Government argues that the Court should first determine whether the government-debt exception is severable, because if it is, then its constitutionality would have no impact on this litigation. *Response* [#60] at 5-8. Although Defendant strongly argues that the government-debt exception is not severable and that the Court must therefore address the constitutionality issue of this provision and its impact on the statute as a whole, Defendant does not argue that the severability issue cannot or should not be decided first. Indeed, in its Reply [#64] to the Government's Response [#60], Defendant addresses severability before addressing the issue of constitutionality under the First Amendment. Thus, in the absence of any argument to the contrary, the Court does so as well.[4]

---

[4] The Court notes that legal authority from the Tenth Circuit Court of Appeals, while not directly addressing this issue, seems to suggest that severability may be determined prior to determining constitutionality so long as the issue of constitutionality would have no effect on the litigation. *See, e.g.*, *Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir. 2014) (rejecting a constitutional challenge to a specific statutory provision where an unchallenged legal obstacle "is enforceable separately and distinctly from the challenged provision"). Here, as Plaintiff notes, "because Plaintiff does not rely on the debt-collection exception in this case, severing the exception will have no impact on Plaintiff's claims and should not result in dismissal of his Complaint." *Response* [#44] at 8; *but see Hand*, 2019 WL 5654351, at *10-11 (out-of-circuit district court opinion holding that constitutionality should be determined before severability even where a severable provision would have no impact on the case). The case primarily relied on by the *Hand* court is *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221 (1987), in which "a [p]laintiff magazine challenged as unconstitutionally underinclusive under the First Amendment a state statute that subjected the magazine to a sales tax while exempting newspapers." *Hand*, 2019 WL 5654351, at *10. There, however, the newspaper exception was likely to be insulated from review because it was unlikely that a newspaper exempted from a tax by the exception would ever bring suit to determine the constitutionality of the exception. Here, the situation is reversed. Indeed, as stated by the Government, "[a]n individual receiving unwanted debt-collection calls pursuant to the exception could likely challenge the provision, and the Court could consider the constitutionality of the exception in circumstances in which its validity determines the availability of relief." *Response* [#60] at 8 n.2. Thus, "[a]voiding the constitutional question here does not insulate the government-debt exception from review but rather ensures that the constitutional issue is reached only when

To the best of the Court's knowledge, every court that has examined the issue of severability has determined that the TCPA's government-debt exception is severable, including two circuit courts. *See, e.g.*, *Duguid*, 926 F.3d at 1156-57; *Am. Assoc. of Political Consultants, Inc.*, 923 F.3d 159, 171 (4th Cir. Apr. 24, 2019), *cert. granted by Barr v. Political Consultants*, 2020 WL 113070 (U.S. Jan. 10, 2020) (No. 19-631); *Rosenberg v. Loan Depot.com*, __ F. Supp. 3d __, __, No. 19-10661-NMG, 2020 WL 409634, at *7-8 (D. Mass. Jan. 24, 2020) (holding the exception severable "[g]iven the severability clause, congressional intent, the ancillary nature of the provision and, for broadly similar reasons as discussed by the Fourth and Ninth Circuits"); *Hand*, 2019 WL 5654351, at *15-16 (holding the exception severable "[g]iven the general presumption in favor of severability, the apparent Congressional intent that the unconstitutional provision be severed, and the TCPA's demonstrated ability to be fully operative without the severed provision"); *Perrong v. Liberty Power Corp., L.L.C.*, 411 F. Supp. 3d 258, 268-69 (D. Del. 2019).

The Court agrees with these persuasive opinions that the government-debt exception, regardless of its constitutionality, is severable for the following reasons. First, there is a severability clause embedded in the TCPA. Pursuant to 47 U.S.C. § 608, "[i]f any provision of this chapter [containing the TCPA] . . . is held invalid, the remainder . . . shall not be affected thereby." The Ninth Circuit has noted that, "[w]hile not dispositive, this unambiguous language endorsing severability relieves us of a counterfactual inquiry as to congressional intent and creates a presumption of severability absent 'strong evidence that Congress intended otherwise.'" *Duguid*, 926 F.3d at 1156 (quoting *Alaska Airlines, Inc. v.*

---

presented by an appropriate party." *Response* [#60] at 8 n.2.

*Brock*, 480 U.S. 678, 686 (1987)). Here, the parties have not directed the Court's attention to "strong evidence that Congress intended otherwise," and the Court itself has found none.

Second, while again not dispositive, the TCPA had been fully operative for over two decades without the clause at issue, which was added by Congress in 2015. *Duguid*, 926 F.3d 1146. "[T]he comparatively modest debt-collection exception . . . did not suddenly and silently become so integral to the TCPA that the statute could not function without it." *Id.* Because the automated call ban had been fully operative for so long, it "cannot [be] show[n] that excising the debt-collection exemption will hamper the function of the ban." *Am. Assoc. of Policial Consultants, Inc.*, 923 F.3d at 171.

Third, finally, the law includes a general presumption in favor of severability. In fact, the United States Supreme Court has explicitly stated that the general rule is "that partial . . . invalidation [of a statute] is the required course" absent compelling reasons to the contrary. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010). Defendant argues that the government-debt exception is not severable because doing so would restrict more speech rather than less speech, relying largely on *Rappa v. New Castle*, 18 F.3d 1043, 1072-73 (3d Cir. 1994). Reply [#64] at 2-3. The Court, however, agrees with the analysis of this same argument made by the court in *Perrong v. Liberty Power Corp., L.L.C.*, 411 F. Supp. 3d at 268-69. *Rappa* held that "the proper remedy for content discrimination generally cannot be to sever the statute so that it restricts more speech than it did before—at least absent quite specific evidence of a legislative preference for elimination of the exception." 18 F.3d at 1073. Thus, it is clear that *Rappa* does not preclude severance any time a statute is deemed underinclusive, but only in the

absence of "quite specific evidence of a legislative preference for elimination of the exception." *Id.* Here, as discussed above, there is "quite specific evidence of a legislative preference" for severance given that the TCPA contains a severance provision specific to the TCPA, unlike the "general severance provision" at issue in *Rappa*. 18 F.3d at 1072-73. In other words, the Court rejects Plaintiff's argument that the Court here is "[f]aced with the same issues as the *Rappa* court" and should therefore come to the same conclusion that severability is precluded here. Reply [#64] at 3; *see also Daguid*, 926 F.3d at 1157 (emphasizing that *Rappa* merely said that "the proper remedy for content discrimination *generally* cannot be to sever the statute so that it restricts more speech than it did before—at least *absent quite specific evidence of a legislative preference* for elimination of the exception" (emphases added by the *Daguid* court)). In short, the Court finds no "compelling reasons" barring severability. *See Free Enter. Fund,* 561 U.S. at 508.

Because the Court finds that the government-debt exception of the TCPA is severable and would have no impact on this case, Defendant's argument that the entire TCPA is unconstitutional on the basis of this clause fails.

Accordingly, the Court **recommends** that the Motion [#33] be **denied** to the extent it seeks dismissal on the basis of unconstitutionality under the First Amendment.

### IV.  Conclusion

Accordingly, for the reasons set forth above,

IT IS HEREBY **RECOMMENDED** that the Motion [#33] be **DENIED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 28, 2020

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge